## COUNTY INVESTMENT CORPORATION v. HOLLANDER ET AL.

[No. 328, September Term, 1971.]

*Decided May 10, 1972.*

*Motion for rehearing filed May 16, 1972; denied May 16, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Andrew W. Starratt, Jr.,* and *Alger Y. Barbee,* with whom were *Barbee & Starratt* on the brief, for appellant.

*Henry J. Noyes* for appellees.

DIGGES, J., delivered the opinion of the Court.

This appeal concerns itself with whether two real estate brokers are now due any commission for efforts expended in locating a tenant which entered into a valid lease agreement. There is no factual dispute. In 1958 appellant, County Investment Corporation, constructed a motor hotel in Rockville, Maryland. Through its president, Joseph Berlin, appellant contacted a hotel real es-

tate broker, Bob Hollander, one of the appellees, and a written listing contract was made between them on February 24, 1959. It exclusively authorized Hollander to negotiate the sale or lease of the hotel. That document stated in part:

> "We [County Investment] agree to pay you a commission as follows: a cash commission equal to 3% of the total amount of the lease and/or option, if exercised, or if you elect, or we elect to pay your commission in monthly installments, we then agree to pay you a sum equal to *5% of the total amount of the said lease* and/or option, if exercised. If a sale is consummated we agree to pay you a commission of five per cent, in cash, of the total sale price. (Emphasis added.)

Subsequently, the broker and his New York associate, Louis Karsh, obtained a tenant, Rockville Plaza Motor Hotel, Incorporated, which in May 1959 entered into a lease agreement with County Investment that partially provided:

> "1. That for and in consideration of rents, covenants, agreements and stipulations hereafter mentioned . . . Lessor . . . does demise, let and lease, unto the Lessee lots designated . . . for a *term of twenty (20) years* from the commencement date as hereinafter defined, and with two twenty year options to run consecutively after the basic *twenty year lease term."* (Emphasis added.)

Though it is unclear at whose behest, an election, as permitted by the listing agreement, was made to have the installment commission of 5% paid. This election was also incorporated in the lease itself which specifically dealt with the brokerage commission but changed its payment from monthly to quarterly intervals. The paragraph applicable to this (number 44) said:

"44. It is agreed by all parties hereto, that Bob Hollander, Realtor . . . and Louis Karsh, Realtor . . . are the Brokers who negotiated this lease. The Lessor hereby agrees to pay to Bob Hollander and Louis Karsh a sum equal to Five percent (5%) of the total rental, including any excess rental for the entire term of this lease, and any renewals thereof. Said amount due Brokers to be paid each and every Three Months in the following manner:

Three percent to Bob Hollander
Two percent to Louis Karsh."

On September 16, 1959 an agreement between County Investment and Hollander-Karsh was signed which made payment of the brokers' commission binding upon appellant or anyone else coming into possession of the property. This compact was then recorded among the Land Records of Montgomery County on September 21, 1959. It stipulated:

"FOR SERVICES RENDERED, the COUNTY INVESTMENT CORP. hereby agrees, that the commission agreement, contained in paragraph 44, of a certain lease dated May 14, 1959, Recorded Liber 2615 Folio 462 by and between COUNTY INVESTMENT CORPORATION (Lessor) and ROCKVILLE PLAZA MOTOR HOTEL, INC. (LESSEE) shall be binding upon the Lessor, its successors, representatives, assigns, Grantees and any subsequent Owner of the aforesaid premises described in said lease, *during the term of this lease,* and any renewals thereof, and it is the intention of the Lessor that this agreement shall run with the land. (Emphasis added.)

Later that month Karsh assigned his interest to Myra Rosenthal Lipman, the other appellee here.

Pursuant to these several agreements, Hollander and

Lipman received their commission for eleven years, until October of 1970, when the lessee defaulted in rent payments and was evicted by County Investment.[1] Appellant then took over the operation of the motel but discontinued sending appellees their quarterly stipend. After a few months wait, Hollander sent the corporation's president a letter in February 1971 requesting that all back commissions be paid. This correspondence was returned with the notation:

"No commission due. Lease terminated by Court in September.
[signed] J. Berlin."

As a result suit was instituted in the Circuit Court for Montgomery County where Judge Shure concluded that despite the eviction of the tenant, appellees were entitled to $38,332.95, which sum represented not only commissions past due but also those which would accrue during the nine remaining years of the twenty year lease term.

On appeal no one disputes that a real estate brokers' commission was earned;[2] the sole controversy before us is whether any of it is still owed. County Investment argues that no money is due appellees. This claim is premised on the contention that the word "term", as used in both the lease and the subsequent agreement dated September 16, 1959, limits the right to receive commission installments to the time the lessee adhered to its contract and actually occupied the premises. The appellant says that should a tenant be evicted, as here, for breaching the lease, then the necessity to pay the remainder of the brokers' fee is at an end. We do not agree. The language of all the documents which discuss appellees' commission utilized "term" in the context of the proposed duration of the lease and not in reference to the tenant's continued compliance with the lease and

1. On October 28, 1970 a Warrant of Restitution was ordered by the People's Court for Montgomery County (now the District Court).
2. Accordingly we are not called upon to consider the applicability of Art. 2, § 17 of the Maryland Code (1957, 1968 Repl. Vol.).

occupancy of the premises. Throughout the lease, whenever "term" is used it explicitly refers to "a term of twenty (20) years" or a "twenty year term".

It is apparent from the lease that while its "term" could be extended through renewal, the minimum duration was fixed at twenty years. Similarly, by clause 44, the brokers' commission was ascertainable as a guaranteed minimum of "Five percent (5%) of the total rental" for the twenty years but which would be augmented if there was "any excess rental [based on lessee's gross receipts] . . . and any renewals thereof." The recorded covenant which refers to clause 44 of the lease also employs "term" as being the equivalent of twenty years. We have been unable to find a Maryland case which has explicated "term" in the context of a fixed time period but the word has been so interpreted in other jurisdictions. In *DePauw University v. United Electric Coal Companies,* 299 Ill. App. 339, 20 N.E.2d 146, 149 (1939), the court said: " 'The term is that period which is granted for the lessee or tenant to occupy and have possession of the premises. It is the estate or interest which he has in the land itself by virtue of the lease from the time it vests in possession.' " Likewise, in *Baldwin v. Thibaudeau,* 17 N.Y.S. 532, 534 (1892), the New York court defined term as follows:

> " 'term' includes not only the actual duration of the leasehold estate, but also the period for which that estate is granted. 'The term does not merely signify the time specified in the lease,— it means that, and more; it means the time in the lease, and the interest conveyed by the lease, and the estate vested in the lessee by the possession.' . . . 'The term is that period which is granted for the lessee or tenant to occupy and have possession of the premises. It is the estate or interest which he has in the land itself by virtue of the lease from the time it vests in possession.' " (Citations omitted.)

See also 41 *Words and Phrases,* "Term," 579-82. We think these specific explanations of "terms" as used in reference to a lease, effectively answer appellant's unsupported contention that the word as employed here has a more restricted meaning.

In the case now before us, the language used in the lease to delineate its "term" is clear and unambiguous and therefore we are prevented from tampering with its meaning. *U.S.I.F. Triangle v. Rockwood Dev. Co.,* 261 Md. 379, 383, 275 A. 2d 487 (1971). Once Hollander procured a tenant for County Investment and a lease was entered into, the total commission was then earned by the brokers. The documents which discuss the commission in no way alter this fact; instead they simply set out the time for effectuating payment. We hold that appellees are entitled to the commission for the remainder of the twenty year lease term. However, that is all they are allowed to receive because the lease has been terminated and that eliminates the possibility of renewal commissions as well as any additional "excess payments" based on the lessee's gross receipts. On appeal, County Investment did not contest the propriety of the trial court's decision to accelerate the payment date of the remaining commission in making its award of $38,332.95. Since no question was presented on this issue for our determination we do not consider it.

*Judgment affirmed.*
*Costs to be paid by appellant.*